# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| HANNAH SHEEHAN, TAMMY HENSON, TAYLOR WICKUM, and KRISTIN HENDERSON,<br><br>Plaintiffs,<br><br>v.<br><br>SPARKS BLACK BEAR, LLC, and GALENA CREEK, LLC,<br><br>Defendants. | 3:18-cv-00510-HDM-CBC<br><br>ORDER |

Before the Court is the Motion to Compel Arbitration (ECF No. 6), filed by Defendants Sparks Black Bear, LLC and Galena Creek, LLC (collectively "Defendants"). Plaintiffs Hannah Sheehan ("Sheehan"), Tammy Henson ("Henson"), Taylor Wickum ("Wickum"), and Kristin Henderson ("Henderson") (collectively "Plaintiffs") responded (ECF No. 14), and Defendants replied (ECF No. 19). For the reasons set forth below, the Motion to Compel Arbitration is GRANTED.

## I. BACKGROUND

According to the complaint, Defendants are entities which operate Black Bear Diner restaurants in Sparks, Nevada and Reno, Nevada. Plaintiffs are former employees of the restaurants and are members of a protected class (women), who were allegedly subjected to adverse treatment "because of sex" in violation of 42 U.S.C. § 2000(e). Plaintiffs bring claims for sexual harassment, quid pro quo sexual harassment, and retaliation. Additionally, Plaintiff

1

Sheehan brings a cause of action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101.

In the instant Motion, Defendants move the Court to dismiss this action for failure to state a claim upon which relief may be granted, or in the alternative, to compel arbitration and stay this case (ECF No. 6). Defendants assert that the Plaintiffs agreed, in a signed writing, to the terms of an arbitration agreement where each Plaintiff and Defendants agreed to submit any and all disputes between them arising out of or relating to employment with Defendants to binding arbitration, including any claims arising under federal statutes. Plaintiffs also waived their right to jury trial and further agreed that arbitration would proceed on an individual basis, without consolidation with claims of other employees. In turn, Defendants agreed to waive their right to a jury trial, arbitrate their claims against Plaintiffs on an individual basis, and pay costs of the arbitrator. (*See* ECF No. 6 at 3-6). Sheehan signed an initial arbitration agreement on July 25, 2017 and on October 17, 2017 she signed a Mutual Arbitration Agreement, which superseded the prior agreement. (*Id.* at 3-4). Henderson signed an initial arbitration agreement on April 5, 2017, and on October 7, 2017, she signed a Mutual Arbitration Agreement, which superseded the prior agreement. (*Id.* at 4-5). Henson signed an Arbitration Agreement on October 25, 2014. (*Id.* at 5.) Wickum signed an Arbitration Agreement on August 14, 2016. (*Id.* at 6.) Defendants argue that the complaint must be dismissed because the Plaintiffs each agreed to arbitrate any and all claims arising out of or related to their employment with Defendants.

## II. LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") states:

> A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contraction or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The Court's role under the FAA is "limited to determining (1) whether a valid

2

agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius, Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013). When determining whether a valid arbitration agreement exists, courts "should apply ordinary state-law principles that govern the formation of contracts" as well as "generally applicable contract defenses, such as fraud, duress, or unconscionability." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). If the Court decides that an arbitration agreement is valid and enforceable, it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276-77 (9th Cir. 2006).

**III. ANALYSIS**

In their response, Plaintiffs argue that the arbitration agreements are procedurally and substantively unconscionable and therefore unenforceable. (ECF No. 14 at 6-12.) Plaintiffs argue that the arbitration agreements are unconscionable because: (1) of "unequal bargaining power;" (2) terms of the agreements were in block text and hard to read; (3) arbitration rules were not supplied; (4) making plaintiffs arbitrate in Clark County is an oppressive term; and (5) agreements were one-sided. (*Id.* at 6-10.) Plaintiffs also claim that the arbitration clauses violate public policy by limiting Title VII. (*Id.* at 10-12.)

"Generally, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a clause as unconscionable." *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (2004). A clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause, as in an adhesion contract, or because the clause and its effects are not readily ascertainably upon a review of the contract because of fine print or complicated, incomplete or misleading language. *Id.* "[S]ubstantive unconscionability focuses on the one-sidedness of the contract terms." *Id.* at 1162-63 (citing *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003)).

Plaintiffs first argue that the arbitration agreements are procedurally unconscionable due to "unequal bargaining power" and the "take it or leave it" nature of the agreements. (ECF No. 14 at 7-10.) "The Nevada Supreme Court has held that adhesion-contract analysis is inapplicable in

3

the employment context." *Hillgen-Ruiz v. TLC Casino Enterprises, Inc.*, No. 2:14-cv-0437-APG-VCF, 2014 WL 5341676, at *6 (D. Nev. Oct. 20, 2014). "An adhesion contract is a standardized contract form offered to consumers of goods and services essentially on a take it or leave it basis, without affording the consumer a realistic opportunity to bargain. We have never applied the adhesion contract doctrine to employment cases." *Kindred v. Second Judicial Dist. Court ex rel. County of Washoe*, 996 P.2d 903, 907 (Nev. 2000). Therefore, Plaintiffs' argument regarding unequal bargaining power between themselves and Defendants necessarily fails.

Second, Plaintiffs argue that the agreements provide no subheadings, bold font, or capital font to indicate important provisions. (ECF No. 14 at 8.) However, the agreements are not buried within a lengthy handbook or presented in fine print, but rather are one to two-page stand alone agreements that contain a clear heading labeled "**Arbitration Agreement**" or "**MUTUAL ARBITRATION AGREEMENT**" and each agreement contains each Plaintiff's signature indicating her understanding of the terms. (ECF No. 6-1.)

Third, Plaintiffs argue that the arbitration agreements are unconscionable as they do not provide or attach copies of arbitration rules cited to in the agreements. (ECF No. 14 at 8, 10.) Plaintiffs cite to an unpublished Nevada Supreme Court case that applies California law for the proposition that "[f]ailure to attach the arbitration rules could be a factor in support of finding procedural unconscionability, but [we] disagree that the failure, by itself, is sufficient to sustain a finding of procedural unconscionability." *Henderson v. Watson*, No. 654545, 2015 WL 2092073, at *2 (Nev. Apr. 29, 2015). The Court finds that including a copy of the arbitration rules cited to in the arbitration agreements would not have aided Plaintiffs' understanding of an already simple and clear arbitration agreement.

Next, Plaintiffs argue that requiring arbitration to occur in Clark County, Nevada is an oppressive term. (ECF No. 14 at 8-9.) In a state that has only one federal district, the Court finds this argument unavailing.

Plaintiffs next argue that the agreements are substantively unconscionable due to "harsh and one-sided" terms. (ECF No. 14 at 9-10.) However, a review of the agreements shows that

4

they are not one-sided but instead impose equal burdens and waive the same rights of each party. (ECF No. 6-1.) For example, each party agreed to submit any and all disputes between them arising out of or relating to employment to binding arbitration, each party waived its right to a jury trial, and to proceed with claims on an individual basis. (*Id.*)

Finally, Plaintiffs argue that the arbitration agreements violate public policy by limiting Title VII because they contain a class action waiver and require each Plaintiff to arbitrate claims on an individual basis. (ECF No. 14 at 10-12.) However, the Supreme Court recently "reaffirmed that arbitration agreements, even those that limit access to class-action proceedings, should be 'rigorously enforced.'" *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, (2013).

Based on the foregoing, the Court finds that Plaintiffs have failed to show that the agreements at issue are procedurally or substantively unconscionable. Upon finding that a claim is subject to an arbitration clause, the Court may dismiss an action without prejudice instead of staying the action while arbitration proceeds. *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). Further, Plaintiffs do not dispute that their claims fall within the scope of the agreements. Accordingly, the Court finds that dismissal is warranted because all of Plaintiffs' claims are subject to arbitration.

**IV. CONCLUSION**

For the foregoing reasons, and for good cause appearing, it is ordered that Defendants' Motion to Compel Arbitration (ECF No. 6) is **GRANTED**.

It is further ordered that the Complaint is dismissed without prejudice. The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED**.

DATED: This 13th day of February, 2019.

_____
UNITED STATES DISTRICT JUDGE

5